UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIAN BELANGER et al., | : | |
| o/b/o themselves and all | : | |
| others similarly situated, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:08-cv-00584 (VLB) |
| PETER R. BLUM et al., each in their | : | |
| individual capacity, | : | |
|     Defendants. | : | June 10, 2009 |

MEMORANDUM OF DECISION DENYING DEFENDANTS' MOTION TO DISMISS
PURSUANT TO 12(b)(1) and GRANTING DEFENDANTS' MOTION TO DISMISS
PURSUANT TO 12(b)(6) [Docs. #31, 32]

Plaintiffs, retired Connecticut state employees, brought this putative class action pursuant to 42 U.S.C. § 1983 alleging violations of their constitutional right to due process of law against the Connecticut State Employees Retirement Commission (SERC) on April 17, 2008. On September 9, 2008, plaintiffs amended their complaint to omit any claim against SERC and instead asserted the identical claim against the fifteen members of SERC ("the state defendants") in their individual capacities only. On October 14, 2008, the state defendants filed the within motions to dismiss on two bases. The first basis is lack of subject matter jurisdiction under the Eleventh Amendment to the United States Constitution [Doc. #31] and the second is failure to state a claim upon which relief may be granted [Doc. #32]. For the reasons stated hereinafter, the Court DENIES the state defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to

1

Fed. R. Civ. P. 12(b)(1) and GRANTS the motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Facts

The complaint, including the minutes of the SERC meeting, incorporated into the complaint by reference, disclose the following facts accepted as true for the purposes of this motion. SERC is the state organ charged with administering Connecticut's state employee pension program. The state defendants are the current members of the commission.[1] Since 1967, some state employees have received "longevity payments." In their final year of state service, the employees receive prorated longevity payments. Retired state employees receive a lifetime annuity pension that is calculated by the state defendants using the retiree's "average covered earnings [for their] three highest-paid years of state service." [Doc. # 24] In 2003, two retirees sued SERC in Connecticut Superior Court arguing that their final longevity payments should be included as covered earnings in SERC's pension calculation. In a case of first impression, the Superior Court affirmed SERC's calculation excluding the longevity payments. In 2005, the Appellate Court reversed the Superior Court's decision and SERC appealed to the Connecticut Supreme Court. On October 2, 2007, in the case of Longley v. SERC, 284 Conn. 149 (2007), the Connecticut Supreme Court affirmed

---

[1]The Court must accept as true all facts alleged in the complaint, but the complaint alleges wrongful acts taken as far back as 1969. It does not seem plausible that all of the state defendants have served together since 1969 on SERC. Since the Court disposes of the case on other grounds, the liability of the state defendants for actions taken back to 1969 need not be examined.

the decision of the Appellate Court and ordered SERC to recalculate the pensions of the two plaintiffs.

The Supreme Court was not asked to and did not address the question of whether  to recalculate pension payments for all retirees. At the October 18, 2007 meeting of SERC, the state defendants held a meeting to discuss that question, i.e., whether to apply the Longley decision retroactively and recalculate pension payments for existing retirees. Counsel for the Retirement & Benefit Services Division, Helen Kemp, made a presentation where she advised the state defendants that retroactivity was not usually applicable where a retirement benefit was concerned and the basis for the recalculation was a change of law based upon a new statutory interpretation. The state defendants also received and discussed the opinion of outside counsel that recalculating benefits prior to Longley could be a breach of fiduciary duty. The state defendants unanimously voted to apply Longley only prospectively in calculating pensions for future retirees and not to recalculate benefits for existing retirees retroactively.

The Amended Complaint [Doc. # 24] further alleges that the decision  to recalculate benefits for existing retirees retroactively constituted a declaratory ruling under state law which could be appealed in an individual action against SERC, and then further appealed to Connecticut Superior Court. The plaintiffs claims that the state defendants deprived the putative class of retirees of their property interests in their pensions without due process of law by failing to recalculate their pensions to include their final longevity payments.

### Rule 12(b)(1) Standard

A party may by motion challenge the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When considering a motion to dismiss on any basis, a court must accept as true all material factual allegations in the complaint." Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131, citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "But, when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Id., citing Norton v. Larney, 266 U.S. 511, 515 (1925).

### Eleventh Amendment Immunity

The state defendants argue that this lawsuit is a suit for retroactive pension benefits barred by the Eleventh Amendment to the United States Constitution, which states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. "A suit for damages against a state by a citizen of the same state, though not specifically prohibited by the Amendment's language, is barred." Fitzpatrick v. Bitzer, 519 F.2d 559, 563 (2d Cir. 1975). The state defendants bear the burden of proving Eleventh Amendment immunity. Woods v. Rondout Valley Central School Dist. Bd of Educ., 466 F.3d 232 (2d Cir. 2006). SERC is an arm of the state for Eleventh Amendment

4

purposes. Fitzpatrick v. Bitzer, 519 F.2d at 564.

The state defendants have been sued in their individual capacities, and SERC is no longer a party. When individual defendants are named, the test for Eleventh Amendment immunity is whether "the judgment sought would expend itself on the public treasury or domain . . ." Dugan v. Rank, 372 U.S. 609, 620 (1963). Accordingly, suits seeking damages from state officials individually are not barred by the Eleventh Amendment unless the damages would *necessarily* paid out of the state treasury. "The law is clear that a state's voluntary decision to indemnify its public servants does not transform a personal-capacity action against a state official into an official-capacity action against the state," Farid v. Smith, 850 F.2d 917, 923 (2d Cir. 1988).

In determining whether a suit against state officials in their personal capacities is barred by the Eleventh Amendment, the Court must determine what kind of relief is sought. In Edelman v. Jordan, the Supreme Court concluded that the relief of retroactive welfare benefits against the nominal defendant, then Director of the Illinois Department of Public Aid, would "not be paid out of the pocket of petitioner Edelman . . . .[but] inevitably come from the general revenues of the State of Illinois." 415 U.S. 651, 665 (1974). The Supreme Court held that such damages were barred. However, while in Edelman, the Supreme Court found the retroactive welfare benefits could not be obtained from the individual defendants because the damages were "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state

**5**

officials," the Supreme Court later found abrogation of Eleventh Amendment immunity in civil rights statutes enacted to enforce rights guaranteed by the Fourteenth Amendment.

The Supreme Court explained the sustainability of such suits in <u>Hafer v. Melo</u>, 502 U.S. 21, 31 (1991), a suit against the auditor-general of Pennsylvania for allegedly unconstitutional firings of subordinates on the basis of their political affiliation, holding that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." The Supreme Court went on to hold that qualified immunity, and not Eleventh Amendment immunity, provided the proper framework for analyzing the defenses of government officers in their personal capacities from suit.

> To be sure, imposing personal liability on state officers may hamper their performance of public duties. But such concerns are properly addressed within the framework of our personal immunity jurisprudence. Insofar as respondents seek damages against [the auditor-general] personally, the Eleventh Amendment does not restrict their ability to sue in federal court.

<u>Id.</u>

Defendants sued in their individual capacity remain liable for any violation of the plaintiffs' constitutional rights, even if their actions were taken in full conformity with state law. <u>Farid v. Smith</u>, 850 F.2d 917, 923 (2d Cir. 1988). Such a rule protects the federal constitution's status as the supreme law of the land. <u>Id</u>. As the plaintiffs have sued the state defendants in their individual capacities only,

**6**

and alleged claims under § 1983, and describe their damages as directed against

the state defendants personally, the Eleventh Amendment does not bar their

claims and this Court has subject matter jurisdiction.

To the extent that the plaintiffs' claim is that the state defendants failed to

conform their actions to Longley, however, such a claim would be barred by the

Eleventh Amendment.

> A federal court's grant of relief against state officials on the basis of
> state law, whether prospective or retroactive, does not vindicate the
> supreme authority of federal law. On the contrary, it is difficult to think
> of a greater intrusion on state sovereignty than when a federal court
> instructs state officials on how to conform their conduct to state law.
> Such a result conflicts directly with the principles of federalism that
> underlie the Eleventh Amendment.

Pennhurst State School & Hosp. v. Halderman 465 U.S. 89, 106 (1984). "The

reasoning of our recent decisions on sovereign immunity thus leads to the

conclusion that a federal suit against state officials on the basis of state law

contravenes the Eleventh Amendment when-as here-the relief sought and

ordered has an impact directly on the State itself." Id. at 117. However, when the

challenge is based on federal law, or on the constitutionality of the state officials'

actions, the Eleventh Amendment does not apply to bar federal jurisdiction. See

Reynolds v. Giuliani, 118 F.Supp.2d 352 (S.D.N.Y. 2000). The Court must therefore

determine whether the plaintiffs have alleged a violation of their rights as

guaranteed by the United States Constitution.

### Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require that a pleading contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   The Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party. . . .  In general, [the court's] review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court must determine whether the plaintiff has pleaded sufficient facts, as opposed to legal conclusions, to have "nudged [the] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U. S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009).

The state defendants have moved to dismiss the case for failure to state a claim upon which relief may be granted and on the basis of qualified immunity. The two defenses are intertwined, because the Court must consider the facts pleaded by the plaintiffs, who are entitled to "all reasonable inferences from the facts alleged, not only those that support [their] claim, but also those that defeat the immunity defense." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

Qualified Immunity

While qualified immunity is an affirmative defense usually stated in an answer, there is "no reason why even a traditional qualified immunity defense

8

may not be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the fact of the complaint." McKenna, 386 F.3d at 436. "Qualified immunity issues must be resolved at the earliest possible stage in litigation." Cipes v. Graham, 386 F.Supp.2d 34, 36 (D.Conn. 2005) quoting Saucier v. Katz, 533 U.S. 194, 201 (2001).

Qualified immunity protects the state defendants to the extent that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Under the previous qualified immunity process of Saucier v. Katz, 533 U.S. at 201, it was mandatory that the district court first determine whether the alleged facts made out a violation of a constitutional right; if the plaintiff satisfied this first step, then the court determined whether the asserted right was "clearly established" at the time of the violation. The Supreme Court recently ruled in Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, 818 (2009) that the Saucier sequence is optional and that the district courts have the discretion to decide only the more narrow "clearly established" issue "in light of the circumstances in the particular case at hand." "Considerations of judicial restraint favor exercising the Pearson option with regard to plaintiffs' . . . claims.  We thus follow the 'older, wiser judicial counsel not to pass on questions of constitutionality ... unless such adjudication is unavoidable.'" Rasul v. Myers, 563 F.3d 527, 530 (D.C.Cir. 2009) quoting Pearson, 129 S.Ct. at 821. Therefore, the Court does not decide whether the declaratory judgment procedure employed by the state defendants is

unconstitutional, but will examine only whether there was law that clearly established due process standards for determining state benefits eligibility.

"Law is not 'clearly established' for purposes of qualified immunity by district court opinions, but by the decisions of circuit courts or the Supreme Court." Cipes, 386 F.Supp.2d at 42. "A district court decision does not clearly establish the law even of its own circuit, much less that of other circuits. Although district judges within a particular circuit will frequently find each other's opinions persuasive, they remain free to disagree." Hawkins v. Steingut, 829 F.2d 317, 321 (2d Cir. 1987).

Here, the plaintiffs do not cite any case establishing the proposition that the declaratory judgment procedure utilized by the state defendants is unconstitutional, much less any standard that the state defendants would have been aware of. They cite a Seventh Circuit case, Levenstein v. Salafsky, 164 F.3d 345 (7th Cir. 1998), which states the *malapropos* rule that a state employee may not be fired from his job for misconduct allegations without notice and an opportunity to be heard. That standard is irrelevant to the state defendants' alleged conduct. The plaintiffs also cite this Court's opinion in Zalaski v. Hartford, 3:08-cv-00601, 2008 WL 4853776 (D. Conn. Nov. 10, 2008), wherein this Court held that qualified immunity could not be determined on the face of the complaint. However, Zalaski dealt with the well-established and familiar standards for a complaint of false arrest and malicious prosecution, and alleged conduct which a reasonable police officer would have known to be unconstitutional.

10

In the absence of any controlling circuit or Supreme Court decision establishing the unconstitutionality of the state defendants' actions, they are immune from suit in their individual capacities. As they are the only remaining defendants in this case, the case must be dismissed.

### Due Process

Though the Court need not reach the underlying issue of the unconstitutionality of the state defendants actions in conformity with state law, it is doubtful that the complaint states a claim for violations of the plaintiffs' rights to due process. "In order to state a claim on which relief can be granted for denial of due process, a plaintiff must allege, *inter alia,* that he has been deprived of a protectible property interest without having been allowed a hearing at a meaningful time and in a meaningful manner. . . As [plaintiff] could have filed an [administrative] proceeding in state court to challenge the denial of his claim for benefits, the complaint failed to state a claim for denial of due process." Terio v. Wing, 79 Fed.Appx. 486 (2d Cir. 2003) (affirming dismissal of § 1983 action against New York state officials in their individual capacities).

Here, it is unclear how the plaintiffs frame the alleged constitutional violation. As this Court cannot reach the substance of the state defendants' decision to award benefits because of Pennhurst, 465 U.S. at 106, a claim for denial of due process can only lie in the procedure the state defendants employed to determine whether benefits were due the plaintiffs. In the complaint, the plaintiffs allege that one month after the decision in Longley, and in advance

**11**

of receiving any actual request for a benefits determination, the state defendants sought the advice of their state counsel and, based on that advice, voted to declare that requests for retroactive benefits based on the decision in <u>Longley</u> would need to be filed individually. <u>See, e.g., Malerba v. SERC</u>, No. HHBCV064011383, 2008 WL 2967018 (Conn. Super. July 15, 2008) (determining as administrative appeal from SERC decision that <u>Longley</u> applied to plaintiffs' claims for benefits). As it is clear from <u>Malerba</u> and those statutes cited in their briefs that the plaintiffs may still receive the retroactive benefits, did the Court reach the issue, the Court would dismiss the complaint for failure to state a claim for denial of due process.

The defendants' motion to dismiss pursuant to Rule 12(b)(1) [Doc. #31] is DENIED. The defendants' motion to dismiss pursuant to Rule 12(b)(6) [Doc. #32] is GRANTED. The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

                                        /s/

                                 Vanessa L. Bryant
                                 United States District Judge

Dated at Hartford, Connecticut:  June 10, 2009.