UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIAN BELANGER, et al. | : | |
|     Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:08-cv-584 (VLB) |
| PETER R. BLUM, et al. | : | |
|     Defendants. | : | March 30, 2010 |

### RULING DENYING THE PLAINTIFFS' MOTION FOR RECONSIDERATION [Doc. #45]

The Plaintiffs presently ask the Court to reconsider its [Doc. #43] June 10, 2009 decision to grant the [Doc. #32] Defendants' Motion to Dismiss.  The Plaintiffs seek this relief pursuant to Local Rule 7(c), noting a belief that the Court's decision reflects a clear error of law.  For the reasons stated hereafter, the Plaintiffs' motion is denied in its entirety.

### I.  Background

On April 17, 2008, the Plaintiffs, a group of retired Connecticut state employees, brought this putative class action pursuant to 42 U.S.C. § 1983 against the Connecticut State Employees Retirement Commission (SERC), alleging violations of their constitutional right to due process of law.  [Doc. #1].  On September 9, 2008, the Plaintiffs amended their complaint to withdraw their claim against SERC as a body and instead asserted their claims against SERC's fifteen members in their individual capacities.  [Doc. #24].  The Plaintiffs allege that the Defendants, as members of the body responsible for administration of Connecticut's state employee pension program, failed to recalculate and

retroactively provide pension payments in light of the Connecticut Supreme Court's October 2, 2007 decision in Longley v. SERC, 284 Conn. 149 (2007).  In that case, the Connecticut Supreme Court affirmed a decision requiring SERC to provide recalculated pension payments to the two plaintiffs who brought that particular action.  The ruling did not address whether SERC was obligated to provide recalculated payments for all retirees.  In their complaint, the Plaintiffs quote, and thereby incorporate by reference,  minutes from an October 18, 2007 SERC meeting to assert that the Defendants determined that "pro-rated longevity payments [would] be made only on a prospective basis for new retirees from the date of the Supreme Court decision and that existing retirees [would] not have a recalculation of their benefit(s)."  Those meeting minutes further reflect that the Defendants unanimously voted to apply Longley prospectively after receiving advice from Counsel for the Retirement & Benefit Services Division and outside counsel that recalculation of benefits prior to Longley was not required and would potentially be a breach of SERC's fiduciary duty:

> Commission members discussed whether under retroactivity it could recalculate those cases which fell within a time period or were awaiting final audit.  A point was raised that outside counsel had suggested recalculating any benefit prior to the Longley decision was a breach of duty as some court cases had held no retroactive payment was necessary and there were statute of limitation issues. After discussion on the legal issues, the Commission asked the Director numerous questions on the various scenarios and estimates he had given the trustees about financial effect of retroactivity on the fund.  The Commission discussed at length the issue of retroactivity, their concerns about its estimated cost, the financial impact on SERS and the Commission's fiduciary duties to both the Plan and its members under the circumstances.  Upon Discussion, Ms. Yelmini moved,

>  seconded by Mr. Luciano to accept that with the exception of Longley and Greenberg, calculations including the pro-rated longevity payments will be made only on a prospective basis for new retirees from the date of the Supreme Court decision and that existing retirees will not have a recalculation of their benefit(s).  All voted in favor.

[Doc. #32, Exhibit A].

The Plaintiffs' initial and amended complaints both allege that "the plaintiffs and other retired SERA-participating employees have a property interest in the extra pension benefits they should have received had their longevity payments been properly factored into their pension calculations" and that "SERC's failure and refusal to pay the plaintiffs and other SERA-participating retirees' pensions that must, by statute, include their final, prorated longevity payments in their final year's salary for purposes of calculating their annual salaries violates their Fourteenth Amendment right not to be deprived of property without due process of law."  [Doc. #1, paras. 39-40].

In their Amended Complaint, the Plaintiffs revised their allegations to further note:

> Because SERC has adopted a formal policy denying the plaintiffs and all proposed class members the relief they seek in this lawsuit, they are excused from exhausting any administrative remedies they might otherwise have had.  Also, because they assert that SERC has deprived them of their constitutional rights under color of law in violation of 42 U.S.C. § 1983, the plaintiffs need not exhaust administrative remedies.

[Doc. # 24, para. 55].  The Amended Complaint also seeks : 1) money damages; 2) punitive damages; 3) attorney's fees under 42 U.S.C. § 1988; 4) interest, including pre-judgment interest; 5) equitable relief; 6) the costs of this action; 7) class

certification under Fed. R. Civ. P. 23 (b)(1)(A) and 23 (b)(2), along with an order for appropriate equitable and remedial relief to ensure that relief granted hereunder is implemented on a class-wide basis; and 8) any further relief that the Court deems just.

On October 14, 2008, the Defendants filed a motion to dismiss the Plaintiff's claim due to a lack of subject matter jurisdiction under the Eleventh Amendment to the United States Constitution and for failure to state a claim upon which relief may be granted.  [Docs. ##31-32].  On June 10, 2009, this Court granted the Defendants' motion on its second basis, noting that their activity was protected by qualified immunity as it did not violate clearly established rights of which a reasonable person would have known.  [Doc. #43].

The Plaintiffs now move for reconsideration, stating "Plaintiffs believe the Court's June 10, 2009 decision shows a clear error of law in that, inter alia, the Court held the defendants immune even though plaintiffs have alleged that they violated established law—the Due Process Clause of the U.S. Constitution and that they, alternatively, have not stated a cause of action under Section 1983."  [Doc. # 45].

## II. Discussion

### A. Standard

A strict standard applies to motions for reconsideration.  Such motions "will generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995).  Therefore, a motion for reconsideration will be denied where the party merely seeks to relitigate an issue that has already been decided.  Id.  The three major grounds for granting a motion for reconsideration in the Second Circuit are:  (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice.  Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.1992) (citing 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790 (1981)).

B.  The Plaintiffs' Request for Reconsideration

The Plaintiffs seek reconsideration on the third available ground for such relief, "to correct a clear error or prevent manifest injustice."  In particular, the Plaintiffs note the Court's statement:  "Here, the plaintiffs do not cite any case establishing the proposition that the declaratory judgment procedure utilized by the state defendants is unconstitutional, much less any standard that the state defendants would have been aware of."  [Doc. #51].  The Plaintiffs highlight and challenge this portion of the Court's ruling, noting:

> No case requires that, as a precondition of suing, plaintiffs prove that the declaratory judgment procedure at issue has been held unconstitutional.  That is not only not necessary, it is not even plaintiff's claim.  Plaintiffs claim that defendants are unconstitutionally manipulating their procedures as a sham to deprive plaintiffs of their

**5**

**property rights. The abuse here is not based upon the written procedures but on how defendants have used them to deprive as many plan participants as possible of their full pensions. The Due Process Clause and Section 1983 are the established laws plaintiffs rely upon. Moreover, it is well established that an administrative body violates these laws by engaging in sham proceedings with predetermined outcomes. Plaintiffs cited Supreme Court case law, Second Circuit case law and other decisions holding that the right to due process is violated by sham proceedings.**

[Id.]

The Plaintiffs, however, misstate the grounds upon which their action has been dismissed.

### C. Due Process Prohibition of "Sham Proceedings"

In deciding whether qualified immunity applies, a Court must determine whether alleged conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Second Circuit instructs that a right is "clearly defined" within the meaning of the qualified immunity doctrine where it is "indicated by prior case law with '*reasonable specificity*.'" In re State Police Litigation 88 F.3d 111, 123. (2d Cir. 1996) (emphasis added). Accordingly, the "contours of the right [must be] sufficiently clear in the context of the alleged [due process and section 1983] violation[s] such that a reasonable official would understand that what he is doing violates that right." NY State Nat. Organization for Women v. Pataki, 261 F.3d 156, 165 (2d Cir. 2001) (internal quotations and citations omitted).

**6**

Within the context of the instant alleged violation, the Court's reasoning reflects that the right in question relates to due process standards for determining state benefits eligibility, and more specifically procedures for the retroactive application of those benefits. In identifying the right in question the Court was guided by the very language of the Plaintiffs' complaint, which states:

> SERC's failure and refusal to pay the plaintiffs and other SERA-participating retirees' pensions that must, by statute, include their final, prorated longevity payments in their final year's salary for purposes of calculating their annual salaries violates the Fourteenth Amendment right not to be deprived of property without due process of law. Therefore, SERC's deprivation of their constitutional rights under color of law violates 42 U.S.C. § 1983.

[Doc. # 24]. The Court therefore determined whether circuit court or Supreme Court decisions have clearly established due process standards for state benefits eligibility. Cipes v. Graham, 386 F.Supp.2d 34, 36 (D. Conn. 2005) (holding that "[l]law is not 'clearly established' for purposes of qualified immunity by district court opinions, but by the decisions of circuit courts or the Supreme Court.").

However, the Plaintiffs seek reconsideration because, in their view, their Amended Complaint contends that the Defendants are unconstitutionally manipulating their procedures as a sham to deprive plaintiffs of their property rights, and therefore the right in question is the Plaintiffs' due process right not to be subjected to a sham proceeding. As a result, the Plaintiffs' argue that the Court failed to properly address their citation of Levenstein v. Salafsky, 164 F.3d 345 (7th Cir. 1998) and analogous cases for their "holding[s] that sham proceedings are constitutionally inadequate proceedings and [Levenstein's]

7

rejection of an immunity defense similar to defendants'." [Doc. #51, pg. 3]. Along these lines, the Plaintiffs contended, in their opposition to the Defendants' motion to dismiss, that:

> Defendants have already voted for a declaratory ruling depriving the plaintiffs of adjusted pensions. Still, the defendants demand that the plaintiffs' appeal to them for relief without suggesting in the slightest way why they might grant it. The Amended Complaint alleges that the defendants' sham procedural maneuvers here follow a long-standing procedural sham under which SERC processed employees' pensions by pretending to account for their longevity payments while actually limiting the payments impact to almost nothing . . . the plaintiffs claim that the defendants have an ulterior motive for channeling retirees' demands through individual administrative claims—to continue to deprive as many retirees as they can of properly calculated pensions—and that the SERC hearing has a predetermined outcome by virtue of SERC's prior declaratory ruling. Plaintiffs claim to be deprived of procedural due process in the same way the Court considered in Levenstein v. Salafsky.

[Doc. #37, pgs. 18-19].

The Court's June 10, 2009 ruling however, does not dispute that a "sham proceeding" as defined in cases[1] such as Levenstein is a violation of a clearly established right. Instead, the Court's ruling reflects that the Plaintiffs' Amended Complaint fails to adequately plead such a "sham proceeding" scenario.

In Levenstein, the plaintiff, a medical school professor who resigned after

---

[1] The Plaintiffs cite a series of cases to note an established prohibition of "sham proceedings." The Court notes, however, that in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123 (1951), where the Supreme Court addressed the Attorney General of the United States' authority to designate organizations as Communist on a list furnished to the Loyalty Review Board without other justification, the majority decision turned on whether the Attorney General's acts exceeded Presidential authorization, and not on whether the official's actions constituted a sham proceeding. Id. at 139. The Court also notes that in citing Kasak v. Vill. Of Bedford Park, 552 F.Supp. 2d 787, 791 (N.D.Ill. 2008) (where a police officer brought suit against a village and police chief for demotion and alleged proceedings were a sham because board had already made its decision before hearing any evidence); Levesque v. Town of Vernon, 341 F. Supp. 2d 126, 135 (D. Conn. 2004) (where court denied qualified immunity on basis that the Defendants predetermined the result of a pretermination hearing and an administrator lacked authority to terminate employment); and York Hospital v. Maine Health Care Finance Com., 719 F. Supp. 1111, 1127 (D. Me. 1989)( generally noting that "[a] chilling effect on constitutionally protected rights can be the basis of a due process claim."), the Plaintiffs cited to district court cases which are insufficient to demonstrate that a right has been clearly established for the purposes of qualified immunity analysis. Cipes v. Graham, 386 F.Supp.2d 34, 36 (D.Conn. 2005).

efforts to receive a fair hearing regarding allegations of sexual harassment, alleged:

> that the procedures used in essentially forcing him out were a blatant sham—the equivalent of no procedures at all. Most or all of them plainly violated internal University rules. For example, he alleges that only the president had the authority initially to suspend a tenured faculty member, but the dean purported to take action in his case. Similarly, the University's procedures require that a tenured faculty member receive a formal hearing within 60 days of a suspension, whereas in his case things were dragging on indefinitely, and he was forced to perform pointless work and live with a cloud on his reputation. And, he alleges the decisionmakers themselves were tainted, all convinced of his guilt.

Levenstein v. Salafsky, 164 F.3d 345, 350 (7th Cir. 1998). The Levenstein court noted that the "sham proceeding" that resulted in the plaintiff's alleged constructive discharge was a violation of a clearly established constitutional right because the plaintiff had a clearly established property interest in his job, and that a "fundamentally biased process is not due process." Id. at 352.

A key distinction between Levenstein and the present case is that, prior to bringing suit, the plaintiff in Levenstein sought remedy through available proceedings, including the university's appeals panel and consultation with the Faculty Advisory Committee, and that the plaintiff cited specific deficiencies in each proceeding demonstrating that the process was tainted and that the outcome was predetermined. Id. at 349-50. In this proceeding, however, the Plaintiffs have made no such showing. The Plaintiffs' Amended Complaint fails to identify a "sham proceeding" to which they have been subjected that led to a deprivation of a clearly established property interest.

In their opposition to the motion to dismiss, the Plaintiffs characterize their allegations in the following manner:

> The plaintiffs allege that Connecticut's highest court agreed that defendants' denial of proper pension calculations was baseless, and that the two retirees suing over the issue be granted adjusted pensions. But still, the Amended Complaint says, the defendants are taking another stab at eluding their responsibilities by voting to refuse to pay any retirees besides the two in the case, while insisting dissatisfied claimants have recourse only to prejudged individual procedures—this with the likely consequence of depriving thousands of employees of honest pension payments. Plaintiffs claim far more than the defendants' conduct is unreasonable and unwarranted. They claim a pattern of intentional deprivations in the face of established rights.

[Doc. 37, pgs. 26-27]. Additionally, in their motion for reconsideration, the Plaintiffs cite to paragraphs 34 and 55 of their Amended Complaint to demonstrate that they have claimed that the "defendants are unconstitutionally manipulating their procedures as a sham to deprive plaintiffs of their property rights." [Doc. #51, pg. 2]. Paragraph 34, however, is the Plaintiffs' reference to the SERC minutes for October 18, 2007 and the body's conclusion that the Longley decision would only be applied on a prospective basis for new retirees. Paragraph 55, in turn, is the Plaintiffs' conclusion that "SERC has adopted a formal policy denying the plaintiffs and all proposed class members the relief they seek" and that "SERC has deprived [the Plaintiffs] of their constitutional rights under color of law in violation of 42 U.S.C. §1983." These excerpts and the Plaintiffs' Amended Complaint overall fail to establish an allegation of a "sham proceeding" that would survive the Defendants' motion to dismiss.

The Supreme Court has recently instructed:

> **To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief.'"**

**Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)** (internal citations omitted).

**The Plaintiffs do not meet the plausibility standard as framed in Iqbal. The Plaintiffs' Amended Complaint fails to identify a proceeding implicating the Plaintiffs' property interest that was tainted by inherent bias or with a predetermined outcome in a manner akin to Levenstein. While the Plaintiffs note disagreement with the Defendants' October 18, 2007 policy decision, they do not provide any facts indicating that the past or any future decision-making process did or would violate due process.**

**Also of note, the Plaintiffs do not allege that the Defendants' decision to apply payments prospectively and not retroactively foreclosed employees from submitting a claim in writing for retroactive payments pursuant to Conn. Gen. Stat. § 5-155a(j) or seeking a claims review and appeal that could be further appealed to the Connecticut Superior Court pursuant to Conn. Gen. Stat. § 5-155a(k). The Amended Complaint also fails to allege that any of the Plaintiffs submitted a claim in writing for retroactive payments pursuant to Conn. Gen. Stat. § 5-155a(j) or sought a claims review and appeal that could be further appealed to**

11

the Connecticut Superior Court pursuant to Conn. Gen. Stat. § 5-155a(k).  Rather, they merely assert in a conclusory manner the futility of such acts.

The Plaintiffs contend that the available claims proceedings are of no significance because of the Second Circuit's guidance that "an adequate post-deprivation remedy is a defense to a Section 1983 due process claim only where the deprivation is random and unauthorized.  By contrast, the existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results from the operation of established state procedures."  Alexandre v. Cortes, 140 F.3d 406, 411 (2d Cir. 1998) (internal quotation marks and citation omitted).

Yet, to the extent that the Plaintiffs allege that a due process violation occurred as the outcome of a sham proceeding, the Plaintiffs fail to plead facts for such a finding.  Therefore, for a "sham proceeding" allegation, the relevant proceeding is not the Defendants' October 18, 2007 policy vote, but rather any denials of Conn. Gen. Stat. § 5-155a(j) requests for retroactive payments after the SERC's policy vote.  In such a scenario, the reasoning in Cortes would likely apply and warrant circumvention of the appeals procedure available under Conn. Gen. Stat. § 5-155a(k).  The Plaintiffs' complaint, however, has only pointed to the Defendants' conclusion, upon receiving legal advice regarding their fiduciary duty as a body, that retroactive calculations would not apply.  The Second Circuit has noted that "[a]lthough a plaintiff is generally not required to exhaust administrative remedies before bringing a §1983 suit, this rule does not apply to a

procedural due process challenges if the plaintiff failed to avail himself of the very administrative procedures he attacks as inadequate." Dotson v. Griesa, 398 F.3d 156, 161 n.2 (2d Cir. 2005).

### D.  Deprivation of a Property Interest Due to a Failure to Recalculate and Retroactively Provide Retirement Benefits in Response to New Statutory Interpretation

In an effort to reach the merits of the Plaintiffs' claim, the Court considered the due process standards for state benefits eligibility, and more specifically procedures for the retroactive application of those benefits in the face of new statutory interpretation as the right in question for purposes of qualified immunity.  For this reason, the Court noted that the Plaintiffs failed to cite case law establishing that the Defendants' October 18, 2007 policy vote violated a clearly established due process right.

The Second Circuit has offered useful guidance for assessing pension property interests.  In Winston v. City of New York, 759 F.2d 242 (1985), the Second Circuit ruled that absent a finding that a teacher was guilty of misconduct, termination of that teacher's right to a pension was a deprivation of property without procedural due process of law.  In that case, the Second Circuit noted that New York's highest court had already interpreted the New York Constitution to establish tenured New York City public school teachers' property interest in the pension rights at issue.  Id. at  248-249.

As part of its analysis, the Second Circuit noted that "the creation of a

property interest is to be found by reference to state law, but once found its sufficiency as protected property in the constitutional sense is decided by federal standards." Id. At 247.  Therefore, this Court will consider the extent to which Connecticut state law has recognized the Defendants' claimed property interest.  The Connecticut Supreme Court has noted that:

> [E]mployees have statutory rights to retirement benefits once they satisfy the eligibility requirements of the [State Employees Retirement Act] by becoming eligible to receive benefits.  In addition, we conclude that the statutory pension scheme establishes a property interest on behalf of all state employees in the existing retirement fund, which interest is entitled to protection from arbitrary legislative action under the due process provisions of our state and federal constitutions.

Pineman v. Oechslin, 488 A.2d 803, 810 (Conn. 1985).  However, while state employees have had a long-standing property interest in the existing retirement fund, their property interest in the longevity payments did not become clear until the Connecticut Supreme Court's 2007 Longley decision.  Additionally, neither Longley nor Pineman clearly established that a failure to provide retroactive payments in the wake of a change in statutory interpretation, such as Longley, was an "arbitrary legislative action" that violated relevant due process provisions.  In fact, the Plaintiffs have not even demonstrated that the State Employees Retirement Act authorizes members of SERC to recalculate benefits based on a new interpretation of law.  The lack of this explicit authority further demonstrates that the right to a declaratory ruling authorizing retroactive pension payments was not a clearly established right.  See Czujak v. City of Bridgeport, 740 A.2d 914, 917 (Conn. App. 1999) (noting that Conn. Gen. Stat. § 31-315's

14

failure to authorize the workers' compensation commission to recalculate a plaintiff's benefits to account for a new interpretation of law barred additional recovery under an expanded definition of maximum "weekly compensation" available under Conn. Gen. Stat. § 7-433b). Accordingly, the Plaintiffs claim is barred by qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

### E.  Requests for Monetary Damages and Equitable Restitution Does Not Render Qualified Immunity Defense Inapplicable

As a final matter, the Plaintiffs contend that Pearson v. Callahan bars a qualified immunity defense where injunctive relief is sought in addition to damages. 129 S. Ct. 808, 822 ( 2009). The Court notes, however, that the injunctive relief that the Plaintiff seeks, retroactive payment of pension benefits on a class-wide basis, is indistinguishable from monetary damages, and thus qualified immunity does apply to the Plaintiffs' pending Section 1983 claim. See Edelman v. Jordan, 415 U.S. 651, 668 (1974) (discussing a false distinction between a requested "equitable restitution" and an award of damages in the context of Eleventh Amendment immunity).

### III.  Conclusion

Based upon the above reasoning, the Plaintiffs' [Doc. #45] Motion for Reconsideration is denied in its entirety. The Plaintiffs have not shown that the Court was incorrect in concluding that the Plaintiffs' claim is barred by the

doctrine of qualified immunity and therefore have not shown that the Court needs to correct a clear error or prevent manifest injustice.

                                            IT IS SO ORDERED.

                                     _____/s/_____
                                     Vanessa L. Bryant
                                     United States District Judge

Dated at Hartford, Connecticut:   March 30, 2010